IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Torrey Josey, | ) | C/A No.: 0:11-2993-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Wal-Mart, | ) | |
| | ) | |
| Defendant. | ) | |

In this employment discrimination case, the *pro se* plaintiff, Torrey Josey ("Plaintiff") is suing his former employer Wal-Mart Stores East, L.P.[1] ("Defendant" or "Wal-Mart"). Plaintiff alleges disability discrimination claims pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and a race discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff's complaint also alleges a claim of negligence under South Carolina law.

This matter comes before the court on the motion to dismiss filed by Defendant pursuant to Fed. R. Civ. P. 12(b)(1). [Entry #6]. On November 4, 2011, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and possible consequences if he failed to adequately respond to the motion to dismiss. [Entry #7]. Plaintiff filed a response to the

---

[1] Plaintiff's complaint identifies "Wal-Mart" as the defendant in this action; however, Defendant has noted in all court filings that the proper defendant entity is Wal-Mart Stores East, L.P. [*See, e.g.,* Entry #6 at 1, n.1]. The undersigned recommends the court change the caption to reflect the defendant as "Wal-Mart Stores East, L.P."

motion [Entry #18],[2] and Wal-Mart filed a reply. [Entry #21]. This motion to dismiss having been fully briefed, it is ripe for disposition.

Also pending before the court is Plaintiff's motion for default judgment. [Entry #16]. Defendant filed a response to the motion [Entry #20], and Plaintiff filed a reply. [Entry #25]. This motion for default judgment having been fully briefed, it is likewise ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motions to dismiss and for default judgment are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant in part and deny in part Defendant's motion to dismiss and deny Plaintiff's motion for default judgment.

---

[2] Plaintiff's response brief provides, "[t]he complaint states a claim for declaratory and injunctive relief under 42 U.S.C. § 1983." [Entry #18 at 1].
  Plaintiff has not asserted any claim or alleged constitutional deprivation pursuant to 42 U.S.C. § 1983 in his complaint. As a result, his reliance upon *Lugar v. Edmundson Oil Co.*, 457 U.S. 922 (1982) in his response is plainly erroneous. To assert a viable claim for an alleged violation of 42 U.S.C. § 1983, Plaintiff must allege and prove state action. *See, e.g., Smith v. Coffy*, No. 2:8-201, 2011 WL 2418606, at *15–16 (D.S.C. May 27, 2011) (citing *Lugar*) (purely private conduct, no matter how wrongful, injurious, or discriminatory is not actionable under § 1983). Plaintiff's complaint asserts no facts that could plausibly convert Defendant's disputed conduct into state action for purposes of a § 1983 claim.
  Despite Plaintiff's failure to cogently respond to Defendant's motion to dismiss, the undersigned must accept the factual allegations set forth in Plaintiff's complaint as true for purposes of analyzing Defendant's motion and is constrained to make the recommendations set forth below.

I.      Factual and Procedural Background

According to his complaint, Plaintiff was employed on December 2, 2010 by Defendant as a "Backroom Associate." [Entry #1-1, ¶ 5]. His duties included unloading trucks, loading and transporting pallets, and stocking and unstocking merchandise. *Id.* While on his lunch break, Plaintiff was riding his moped and was allegedly struck by a car. *Id.* at ¶ 3. He claims he immediately called Defendant management to let them know he had been in an accident and would not be able to return to work that day. *Id.* at ¶ 4.

Plaintiff allegedly "suffered great physical harm and injury from the incident." *Id.* On December 3, 2010, he claims to have obtained a "doctor excuse for light duty" because he allegedly could not stand for long periods of time and assumed new job duties as a phone operator/fitting room associate. *Id.* at ¶ 5. His new duties included assisting customers at the fitting room, stocking clothes, answering phone calls, and paging. *Id.* at ¶ 6. He requested and was given a chair to use as phone operator. *Id.* Plaintiff alleges another associate was likewise allowed to "use [a] chair for back injury also to accommodate for disability." *Id.*

On January 1, 2011, Plaintiff was allegedly approached by two managers from a different department of the store who informed him that he could not have a chair while on duty. *Id.* at ¶ 7. Plaintiff claims to have explained that management was aware of his injuries and that he needed the chair as a result of back injuries sustained in a car accident. *Id.* Plaintiff contends the managers continued to "abrubtly" demand, "in the presen[ce] of customers and associates," that he could not have the chair and said that

higher management had assigned them to make the demand. *Id.* Plaintiff claims he was "embarrassed, confused, and distraught" over the incident. *Id.* Plaintiff states that when he explained the event to his own shift manager, the manager denied knowledge of the accident—though Plaintiff claims she came to the accident scene—and Plaintiff was again "refused to use the chair any longer." *Id.* at ¶ 8. Plaintiff states that he returned to his work area, removed the chair, and finished his shift. *Id.*

On January 4, 2011, Plaintiff was allegedly called to Defendant's office, asked about the matter by two different managers, written up for insubordination, and told to immediately leave the premises and not to return until he was fully recovered. *Id.* at ¶ 9. He claims Defendant told him there was not a light duty position available even though he "was on light duty as phone operator/fitting associate for a month." *Id.*

Plaintiff claims to have filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and unsuccessfully mediated the matter with Defendant's lawyer on June 10, 2011.[3] *Id.* at ¶ 10.

Plaintiff seeks actual and punitive damages in an appropriate amount "not to exceed $1,500,000.00." *Id.* at 6.

II. Discussion

A. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

---

[3] Plaintiff has provided no additional information regarding his alleged EEOC claim.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

B. Analysis

1. Plaintiff's ADA Claims

a. ADA Accommodation Claim

Construed liberally, Plaintiff's complaint asserts Defendant discriminated against him by failing to provide a reasonable accommodation under the ADA. The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The prima facie case for a plaintiff's ADA claim based on the employer's failure to accommodate the employee's disability is comprised of the following elements: "(1) that (he) was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 (4th Cir. 2001),[4] citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2nd Cir. 1999).

Defendant argues that Plaintiff has not shown that he has a "disability" as that term is defined in the ADA, and therefore cannot pass the initial threshold for presenting a valid claim under that statute. [Entry #6-1 at 6–7]. Hence, the initial issue before the court is whether Plaintiff is a qualified individual with a disability under the ADA, as amended by the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009.

---

[4] *Rhoads* was decided prior to the passage of the ADAAA; however, the Fourth Circuit has not stated whether the elements have changed in light of the ADAAA. Because the ADAAA primarily addresses the definition and determination of "disability" and does not appear to impact the elements of a prima facie case at issue here, the undersigned relies on the elements set forth in *Rhoads* in analyzing Defendant's motion to dismiss.

42 U.S.C. §§ 12101, et seq. The ADAAA provides that "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553.

The ADA provides that an individual has a disability if he has: (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Before Congress amended the ADA in 2008, the Supreme Court construed the Act strictly, finding that an individual was "substantially limited" only if he had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002). The Court, citing the EEOC's interpretation of the pre-amendment standard, further held that the impairment's impact must be "permanent or long term." *Id.* In another leading ADA case, the Court dictated that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 499 (1999).

With the passage of the ADAAA, however, Congress explicitly rejected *Toyota* and *Sutton* and increased the statute's non-exhaustive list of "major life activities" in an

effort to promote a less-restrictive interpretation of "disability." Pub. L. No. 110–325, §§ 2(b) (1)-(6), 4(a), 122 Stat. at 3555. In doing so, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, § 4(a), 122 Stat. at 3555. To that end, the EEOC's interpretation of the amended ADA notes that "substantially limits" is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) (2011). The EEOC further opined that even "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." *Id.* § 1630.2(j)(1)(ix). Moreover, the EEOC found that "whether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.'" *Id.* § 1630.2(i)(2). Rather, "the determination of whether an impairment substantially limits a major life activity requires an individualized assessment," and should "require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." *Id.* § 1630.2(j)(1)(iv).

Plaintiff's alleged disability is a "back injury," though he does not provide any information regarding the severity or duration of his injury. Plaintiff's complaint may be liberally read to allege that his injury substantially limits the major life activity of working. Under the less restrictive standards of the ADAAA, the court is constrained to find that Plaintiff has offered sufficient factual allegations to adequately plead that he was disabled during the relevant time period.

With respect to the second element—that Defendant had notice of Plaintiff's disability—Plaintiff has alleged that he immediately notified Defendant of his accident,

provided a written doctor's excuse, and was assigned a new, light-duty position. [Entry #1-1 at ¶¶ 4, 5]. Plaintiff further alleges that his shift manager went to the scene of the moped accident. *Id.* at 8. Accepting these allegations as true, Defendant was on notice of Plaintiff's alleged disability; thus, Plaintiff has set forth sufficient allegations to satisfy this element.

The third element of Plaintiff's accommodation claim requires him to show that, with a reasonable accommodation, he could perform the essential functions of the position. The term "reasonable accommodation" is defined in 29 C.F.R. § 1630.2(o)(1), inter alia, as "(ii) [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (iii) [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities." Reasonable accommodations may include "[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices ... appropriate modification of ... policies ... and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(2)(ii).

The regulations further provide that "to determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and

potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). In *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. Appx. 314, 2011 WL 1491230 (4th Cir. April 20, 2011, unpublished), the court quoted the Seventh Circuit regarding the interactive process:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996).

Plaintiff's complaint suggests the parties engaged in an interactive process on December 2, 2010, when Plaintiff presented his doctor's excuse restricting him to light duty. [Entry #1-1 at ¶ 5]. Plaintiff's allegations, taken as true, further suggest Defendant made a reasonable accommodation for Plaintiff in assigning him to a position as a phone operator/fitting room associate and allowing him the use of a chair. *Id.* ¶¶ 5, 6. Plaintiff subsequently worked in his reassigned position for 29 days. Accepted as true, these allegations are sufficient for Plaintiff to show he was able to perform the job functions of the reassigned position with a reasonable accommodation and the third element of establishing Plaintiff's prima facie case is satisfied.

Finally, Plaintiff must show that Defendant refused to make the reasonable accommodation. Plaintiff satisfies this element by alleging that, after nearly one month

of using a chair on the job, Defendant refused to allow Plaintiff to continue using the chair.

In light of the ADAAA's less restrictive standards on establishing a disability and this court's obligation to accept Plaintiff's allegations as true, the undersigned finds that Plaintiff's accommodation claim is plausible on its face and recommends denial of Defendant's motion to dismiss this claim.

        b.       Wrongful Termination Claim

Plaintiff also appears to assert a claim for wrongful termination under the ADA.[5] [Entry #1-1 at ¶ 11(C)]. To establish a prima facie case of wrongful termination based upon a disability, Plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate

---

[5] In addition to wrongful termination under the ADA, Defendant reads Plaintiff's complaint to state a claim for wrongful discharge in violation of public policy under South Carolina law. [Entry #6-1 at 8]. Under South Carolina's doctrine of employment at-will, either party may terminate the employment contract at any time, for any reason, or no reason at all. *See Prescott v. Farmers Tel. Coop., Inc.,* 516 S.E.2d 923, 925 (S.C. 1999). South Carolina courts, however, have carved out an exception when the discharge of an at-will employee constitutes a violation of a clear mandate of public policy. *See Ludwick,* 337 S.E.2d 213, 214 (S.C. 1985). Although not definitively so, the exception has been narrowly available, typically, only "when an employer requires an employee to violate the law or the reason for the employee's termination was itself a violation of criminal law." *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011). But, the exception does not extend to situations where the employee has an existing statutory remedy for wrongful termination. *See Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (S.C. 1992) (existing statutory remedy for wrongful termination under Fair Labor Standards Act).

Plaintiff has not alleged that Defendant forced him to violate the law or that his termination was in violation of criminal law. Furthermore, Plaintiff's claims are more properly brought under the ADA, which provides a statutory remedy for wrongful termination in the disability context. Consequently, to the extent Plaintiff's complaint states a claim for wrongful discharge in violation of public policy, it is recommended that such claim be dismissed.

expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696 (4th Cir. 2001).

Defendant again contends Plaintiff has not established he was a qualified individual with a disability. [Entry #6-1 at 6–7]. For the reasons set forth above, the undersigned concludes Plaintiff's allegations are sufficient to make a prima facie showing of disability under the ADAAA.

With respect to the remaining elements, Plaintiff alleges that he was constructively discharged; there was "no evidence [] providing a reasonable discharge"; and he was ultimately told not to return to his job until he was "fully recovered." [Entry #1-1 at ¶¶ 6, 7, 9, 11(C)]. These allegations are sufficient to make a prima facie showing of wrongful termination under the ADA and the undersigned, therefore, recommends denial of Defendant's motion to dismiss this claim.

     c.  ADA Retaliation Claim

Plaintiff next asserts a retaliation claim alleging that Defendant discriminated against him by terminating him "for asking why the accommodation was suspended." [Entry #1-1 at ¶ 11(E)]. To establish a prima facie case of retaliation under the ADA, Plaintiff must show: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) his protected activity was causally connected to his employer's adverse action. *Rhoads*, 257 F.3d at 392. "Protected activity" under the statute falls into one of two categories: opposition or participation. *Crawford v. Metro.*

*Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271 (2009). To establish that he engaged in protected opposition activity, a plaintiff must show that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003). Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under federal employment discrimination laws. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (Title VII).

The complaint contains no allegations that Plaintiff engaged in any activity protected by a federal employment statute prior to his termination. *See, e.g., Hindman v. Greenville Hosp. Sys.*, 947 F. Supp. 215, 224 (D.S.C. 1996) (stating that the requisite causal connection can be shown only if the protected activity preceded the alleged retaliatory conduct). Consequently, he has failed to establish a prima facie case of retaliation under the ADA and it is recommended that his retaliation claim be dismissed.

d. Hostile Work Environment Claim

Plaintiff alleges he was "[h]arassed by management about disability." [Entry #1-1 at ¶ 11(D)]. The court liberally reads this allegation to state a claim of hostile work environment under the ADA. To establish a hostile work environment claim, Plaintiff must prove that:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors. Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

In the context of Plaintiff's accommodation and wrongful discharge claims above, the undersigned determined that Plaintiff presented sufficient evidence to make a prima facie showing of being a "qualified individual with a disability." Thus, the first element of Plaintiff's hostile work environment claim is satisfied. Plaintiff's claim that he was "[h]arassed by management about disability" likewise facially satisfies the second, third, and fifth elements of the claim.

The primary issue for the court to decide is whether Plaintiff's allegations are sufficient to demonstrate that the alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment. To satisfy this element, Plaintiff must show that he not only subjectively believed his workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile. *Fox*, 247 F.3d at 178. To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 178. The conduct at issue must be far more severe than that of "a merely unpleasant working environment," *Hopkins v. Balt. Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.), *cert. denied,* 519 U.S. 818 (1996), and must be sufficiently "pervasive [so] as to become diffuse throughout every part of the ... work environment in which plaintiff functioned." *Schweitzer-Reschke v. Avnet, Inc.,* 874 F. Supp. 1187, 1195 (D. Kan. 1995).

In his complaint, Plaintiff describes an incident occurring on January 1, 2011, in which managers "demanded in the presen[ce] of customers and associates that he couldn't have a chair while on duty." [Entry #1-1 at ¶ 7]. This occurrence appears to be the only basis for Plaintiff's hostile work environment claim. However, Defendant did not address a potential hostile work environment in its motion to dismiss nor did Plaintiff include any additional information regarding such a claim in his response brief. Because neither party has fully addressed the allegations related to this claim, it is difficult and premature at this stage of the litigation to make a final determination as to its viability. Accordingly, the undersigned recommends that Plaintiff's hostile work environment claim survive Defendant's motion to dismiss.

2. Plaintiff's Title VII Claim

Plaintiff alleges he was "[d]iscriminated against cause one employee was able to work in a stead [sic] the other could not and both had back injuries, different races." [Entry #1-1 at ¶ 11(B)]. Plaintiff also contends that he was "granted a chair to use as a phone operator, because another associate was granted to use a chair for back injury also to accommodate disability." *Id.* at ¶ 6. Plaintiff's complaint appears to allege that while his employer refused to allow him to continue using a chair on the job, Defendant allowed the other employee, who was of a different race, to continue using a chair. The undersigned therefore concludes Plaintiff has stated a claim of disparate treatment under Title VII.

To establish a prima facie case of racial discrimination under Title VII, a plaintiff must prove: (1) he is a member of a protected class; (2) he was performing satisfactorily;

(3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Coleman v. Maryland Ct.of App.*, 626 F.3d 187, 190 (4th Cir. 2010). The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

Here, Plaintiff does not specify the protected class to which he belongs, but alleges that in refusing to allow him to continue using a chair, Defendant treated him differently than a similarly-situated employee. Defendant did not address a potential Title VII discrimination claim in its motion to dismiss nor did Plaintiff include any additional information regarding such a claim in his response brief. Because neither party has fully addressed the allegations related to this claim, the undersigned recommends that Plaintiff's Title VII discrimination claim survive Defendant's motion to dismiss.

       3.      Plaintiff's Negligence Claim

Plaintiff claims Defendant was "negligent, grossly negligent, wanton, willful, and careless" in failing to accommodate his disability and discriminating and retaliating against him. [Entry #1-1 at ¶ 11]. While a cause of action for negligence is generally available under state common law, Plaintiff has failed to set forth the elements for such a claim. *See Nelson v. City of Conway's Dept. of Soc. Servs.*, No. 4:10-3119, 2011 WL 3841107 (D.S.C. July 29, 2011) (citing *Thomasko v. Poole,* 561 S.E.2d 597, 599 (S.C. 2002) (noting that a plaintiff raising a negligence claim must allege (1) the defendants owed her a duty of care; (2) the defendants breached that duty by a negligent act or

omission; and (3) she suffered damage as a proximate result of that breach). For this reason, the undersigned recommends dismissal of Plaintiff's negligence claim.[6]

C.  Plaintiff's Motion for Default Judgment

Plaintiff's motion for default judgment alleges Defendant failed "to Answer Plaintiff's Summons in a timely fashion." [Entry #16 at 1]. Plaintiff filed this action in South Carolina state court on September 28, 2011. [Entry #1-1]. Defendant was served with the summons and complaint on October 3, 2011. [Entry #16-2 at 7–8]. Defendant filed a notice of removal on November 2, 2011 [Entry #1], and a motion to dismiss on November 3, 2011. [Entry #6]. Defendant's removal was timely because it was filed within thirty days of receiving the initial pleading pursuant to 28 U.S.C. § 1446(b). Defendant's motion to dismiss was also timely because it was filed within seven days after the removal was filed. Fed. R. Civ. P. 81(c)(2). For the foregoing reasons, it is recommended that Plaintiff's motion for default judgment be denied.

III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion to dismiss [Entry #6] be granted as to Plaintiff's negligence and ADA retaliation claims. To the extent the district court finds that Plaintiff's complaint states a claim for wrongful termination in violation of public policy, the undersigned likewise recommends that Defendant's motion to dismiss on that claim be granted. The undersigned recommends

---

[6] Defendant argues that Plaintiff's negligence claim is also barred by the exclusivity provision of the South Carolina Workers' Compensation Act. [Entry #6-1 at 5]. The pleadings do not set forth sufficient facts to determine whether Plaintiff's injury was work related and the undersigned therefore declines to accept Defendant's exclusivity argument.

Defendant's motion to dismiss be denied as to Plaintiff's Title VII discrimination claim, accommodation, wrongful termination, and hostile work environment claims under the ADA. The undersigned recommends Plaintiff's motion for default judgment [Entry #16] be denied. Upon the district court's ruling on the motion to dismiss, the undersigned will issue a scheduling order as applicable.

    IT IS SO RECOMMENDED.

February 16, 2012　　　　　　　　　　　　　　　　Shiva V. Hodges
Columbia, South Carolina　　　　　　　　　　　　United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).