IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Torrey Josey, ) | C/A No.: 0:11-2993-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Wal-Mart Stores East, L-P, ) | |
| ) | |
| Defendant. ) | |

In this employment discrimination case, *pro se* plaintiff Torrey Josey ("Plaintiff") is suing his former employer Wal-Mart Stores East, L.P. ("Defendant" or "Wal-Mart"). Plaintiff asserts claims for (1) failure to accommodate a disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); (2) wrongful termination in violation of the ADA; (3) hostile work environment in violation of the ADA; and (4) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

This matter comes before the court on Wal-Mart's motion for summary judgment filed on May 10, 2013. [Entry #116]. On May 13, 2013, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and possible consequences if he failed to adequately respond to the motion to dismiss. [Entry #117]. This motion having been fully briefed [Entry #122, #123, #124], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).

Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Wal-Mart's motion for summary judgment.

I.   Factual and Procedural Background

Plaintiff began work at Wal-Mart's Indian Land, South Carolina, store on August 28, 2010, as an Inventory Associate. [Entry #116-3 at 10]. His duties included unloading trucks, loading and transporting pallets, and stocking and unstocking merchandise. [Entry #1-1 at 5; Entry #116-3 at 12]. Plaintiff was injured in a non-work related moped accident on December 2, 2010, during his lunch break. Pl. Dep. 121:17–7 (Plaintiff's deposition can be found at Entry #116-2). Plaintiff immediately notified Wal-Mart that he would not be able to return to work that day because he had been in an accident. [Entry #1-1 at 5].

On December 3, 2010, Plaintiff went to a chiropractor at Lancaster One Medical, who gave him a note to return to work the same day with the following limitation: "no lifting greater than five pounds for one week" through December 10, 2010. [Entry #116-3 at 23; Pl. Dep. 137:9–15]. On December 10, 2010, Plaintiff returned to Lancaster One Medical and received a second note, which provided that he "was sufficiently recovered to return to work" with the following limitation: "please allow patient to work part time five hours per day while recovering from MVC [motor vehicle collision]" through December 17, 2010. [Entry #116-3 at 24]. The December 10, 2010, note did not mention or continue his previous lifting restriction. *Id*. Plaintiff provided the note to Wal-Mart. Pl.

2

Dep. 225:19–23. On December 15, 2010, Plaintiff returned to Lancaster One Medical and received a third note, which provided that he "was sufficiently recovered to return to work or school" with the following limitation: "[c]an only work half days with continued light duty" through January 3, 2011. [Entry #116-3 at 25]. Like the second note, the December 15, 2010, note did not mention or assign any lifting restriction. *Id.* On or about December 29, 2010, Plaintiff received a note from a chiropractor at Bentley Chiropractic excusing the Plaintiff from work through December 30, 2010. [Entry #116-3 at 26].

When Plaintiff returned to work at Wal-Mart, he claims a manager told him to go to the fitting rooms "and see what [he] could do at that position." Pl. Dep. 146:21–25. He alleges he began new job duties as a phone operator/fitting room associate, which included assisting customers at the fitting room, stocking clothes, answering phone calls, and paging. [Entry #1-1 at 5]. Plaintiff admits that no supervisor or manager ever gave him permission to use a chair for this work and that the notes from his health care providers never mentioned the need for Plaintiff to use a chair or a stool. Pl. Dep. 146:16–20; 173:6–9.

On January 1, 2011, Assistant Managers Toni Alexander and Rhonda Lee observed Plaintiff near the fitting room reclining in a black leather office chair. [Entry #116-8 at 2–3]. Plaintiff admits that he removed the chair from a display rack on the sales floor without permission from any salaried manager. Pl. Dep. 158:6–11. According to Plaintiff, Alexander told him in a rude manner that he could not use a chair. Pl. Dep. 153:22–154:11. According to Alexander, Plaintiff raised his voice, claimed she was discriminating against him because he was disabled, and stated that he was going to call

3

his attorney. *Id.* at 3. As a result of the confrontation, Plaintiff, Alexander, and Lee all went to discuss the matter with Shift Manager Sherry Hicks. Pl. Dep. 155:19–24.

Hicks avers that Plaintiff was loud and hostile during their discussion. [Entry #116-7 at 3]. Hicks instructed Plaintiff to stop using the reclining black leather office chair, but offered to allow him to use a different chair or stool. Pl. Dep. 162:15–163:4. Plaintiff returned to his work area, removed the black leather office chair, and finished his shift using a red, plastic chair. *Id.*

On January 4, 2011, the next day that Plaintiff was scheduled to work, Plaintiff was issued a verbal warning (or "coaching") by Assistant Managers Gary Heffelfinger and Wayne Rowan for insubordination regarding the incident on January 1, 2011. Pl. Dep. 228:8–229:14; Entry #116-3 at 27. The coaching states, "On Saturday Torrey was told that he could not have a chair at the fitting room to answer the phones. Then he started to get loud with the Assistant Manager and they took it to a shift manager where he was loud with her also." *Id*. Plaintiff alleges that Rowan then told him to leave the store and that he could not return to work until his restrictions were removed such that he could return to his position as an Inventory Associate. Pl. Dep. 85:15–25.

Plaintiff did not provide any written information concerning his medical condition from January 4, 2011, to May 11, 2011. [Entry #116-7 at 6]. On May 11, 2011, Plaintiff was released to return to work without restriction. Pl. Dep. 175:2–177:16. Wal-Mart placed him back on its work schedule without requiring him to complete a new employment application. *Id*. On the day that Wal-Mart scheduled him to return to work, Plaintiff called then-Assistant Manager Brandon Gardner and informed him that he was

4

having car trouble and would not be able to make it to work. Pl. Dep 177: 17–178:9. Plaintiff never returned to work and the last day he performed any work for Wal-Mart was January 4, 2011. Pl. Dep. 178:18–21.

II.     Discussion

    A.     Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972), and *Haines v. Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine dispute of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

B.	Analysis

1.	Plaintiff's ADA Claims

a.	ADA Accommodation Claim

Plaintiff asserts Wal-Mart discriminated against him by failing to provide a reasonable accommodation under the ADA, as amended by the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. 42 U.S.C. §§ 12101, *et seq*. The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Defendant argues that Plaintiff has not shown that he was a qualified individual with a disability under the ADA. The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The prima facie case for a plaintiff's ADA claim based on the employer's failure to accommodate the employee's disability is comprised of the following elements: "(1) that (he) was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 (4th Cir. 2001)[1] (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2nd Cir. 1999)).

---

[1] *Rhoads* was decided prior to the passage of the ADAAA; however, the Fourth Circuit has not stated whether the elements have changed in light of the ADAAA. Because the ADAAA primarily addresses the definition and determination of "disability" and does not appear to impact the elements of a prima facie case at issue here, the undersigned

First, Plaintiff must show that he has a "disability" as that term is defined by the ADAAA. The ADAAA provides that "whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553. The ADA provides that an individual has a disability if he: (1) has "a physical or mental impairment that substantially limits one or more major life activities;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Before Congress amended the ADA in 2008, the Supreme Court construed the Act strictly, finding that an individual was "substantially limited" only if he had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002). The Court, citing the EEOC's interpretation of the pre-amendment standard, further held that the impairment's impact must be "permanent or long term." *Id.* In another leading ADA case, the Court dictated that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 499 (1999).

---

relies on the elements set forth in *Rhoads* in analyzing Wal-Mart's motion for summary judgment.

With the passage of the ADAAA, however, Congress explicitly rejected *Toyota* and *Sutton* and increased the statute's non-exhaustive list of "major life activities" in an effort to promote a less-restrictive interpretation of "disability." Pub. L. No. 110–325, §§ 2(b) (1)-(6), 4(a), 122 Stat. at 3555. In doing so, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, § 4(a), 122 Stat. at 3555. To that end, the EEOC's interpretation of the amended ADA notes that "substantially limits" is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) (2011). The EEOC further opined that even "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." *Id.* § 1630.2(j)(1)(ix). Moreover, the EEOC found that "whether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.'" *Id.* § 1630.2(i)(2). Rather, "the determination of whether an impairment substantially limits a major life activity requires an individualized assessment," and should "require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." *Id.* § 1630.2(j)(1)(iv).

Plaintiff's alleged disability is that he has swollen discs in his back at T10 and T11. Pl. Dep. 17:13–22. Under the less restrictive standards of the ADAAA, Plaintiff has offered sufficient facts to withstand summary judgment regarding whether he had a disability.

With respect to the second element—that defendant had notice of Plaintiff's disability—Plaintiff showed that he notified Wal-Mart of his accident, provided a written

8

chiropractor's excuse, and was told to see if he could help near the fitting rooms. [Entry #1-1 at ¶¶ 4, 5; Pl. Dep. 146:21–25]. However, Plaintiff has not shown that Wal-Mart knew that his injury substantially limited a major life activity. Although Plaintiff submitted a chiropractor's note requesting that he not be required to lift over five pounds for one week, the note did not identify a physical or mental impairment that would substantially limit a major life activity, and the requested restriction lasted only one week. Similarly, on December 10 and 15, 2010, Plaintiff provided notes from his chiropractors that requested Plaintiff work limited hours and be on "light duty" until January 3, 2011. [Entry #116-3 at 24–25]. None of these requests identified a physical or mental impairment that substantially limited one of Plaintiff's major life activities. Therefore, Plaintiff has not shown that Defendant knew he was disabled under the ADA.

The third element of Plaintiff's accommodation claim requires him to show that, with a reasonable accommodation, he could perform the essential functions of the position. The term "reasonable accommodation" is defined in 29 C.F.R. § 1630.2(o)(1), inter alia, as "(ii) [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (iii) [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities." Reasonable accommodations may include "[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of

9

equipment or devices . . . appropriate modification of . . . policies . . . and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(2)(ii).

The regulations further provide that "to determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). In *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. Appx. 314, 2011 WL 1491230 (4th Cir. April 20, 2011, unpublished), the court quoted the Seventh Circuit regarding the interactive process:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Id*. (citing *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996)).

Plaintiff admits that he was not able to perform the essential functions of his position as an Inventory Associate with or without a chair as of January 4, 2011. Pl. Dep. 186:22–187:10. Therefore, because Plaintiff has not shown that he could perform the essential functions of his job with or without a reasonable accommodation, he has failed to show that he is a qualified individual under the ADA. To the extent that Plaintiff

contends that Wal-Mart should have accommodated him by transferring him indefinitely to a position as fitting room associate/phone operator, with or without the use of a chair, Plaintiff's argument is unavailing. Providing a reasonable accommodation "does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty.'" *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011). Furthermore, even if Plaintiff were disabled, Wal-Mart is not required to "create a new position as an accommodation to a disabled employee." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002).

Although Plaintiff may argue that Wal-Mart reassigned him and then refused to allow him a reasonable accommodation in his new position, the evidence does not support the argument that Wal-Mart intended to permanently reassign Plaintiff. Plaintiff was told to see if he could help near the fitting rooms in response to his chiropractor's note indicating he was restricted from lifting for one week. Pl. Dep. 146:21–25. On December 10, 2013, the day the lifting restrictions expired, he provided another chiropractor's note requesting he be able to work half days. [Entry #116-3 at 24]. He then provided another note from the chiropractor requesting he be allowed to work half days and be on light duty until January 3, 2011. *Id*. at 25. Therefore, each of the chiropractor's notes were limited in time and there is no evidence that Wal-Mart intended to indefinitely change Plaintiff's position. Tellingly, Plaintiff did not complete any paperwork indicating a change of position nor did he utilize Wal-Mart career preference system to indicate his desire to change positions. [Entry #116-5 at 5, 7]. At best, Plaintiff has shown that Wal-

11

Mart temporarily allowed him to work in a different capacity for the limited duration covered by chiropractor's notes.

Finally, given that Plaintiff admitted that he could not fulfill the essential functions of his job as an Inventory Associate with a chair and provided no other proposed accommodation for the position, he has failed to show that Defendant refused to make a reasonable accommodation.

                b.        Wrongful Termination Claim

Plaintiff also appears to assert a claim for wrongful termination under the ADA. [Entry #1-1 at ¶ 11(C)]. To establish a prima facie case of wrongful termination based upon a disability, Plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696 (4th Cir. 2001).

Defendant again contends Plaintiff has not established he was a qualified individual with a disability. [Entry #116-1 at 24]. For the reasons set forth above, the undersigned agrees that Plaintiff has failed to show that he was a qualified individual with a disability. However, in the event the district judge disagrees with this analysis, the undersigned proceeds to analyze Plaintiff's wrongful termination claim.

Plaintiff alleges that he was discharged because Rowan allegedly told him not to return to his job until he was able to perform the essential functions of his job. Pl. Dep.

85:15–25. However, Plaintiff provides no evidence that this statement constituted a termination. In fact, when Plaintiff's health care providers indicated he was able to return to work without restriction in May 2011, Wal-Mart put him back on the schedule. Pl. Dep. 175: 2–177:16. Wal-Mart did not require Plaintiff to complete the paperwork necessary for new hires. *Id*. Although Plaintiff may have subjectively believed he was terminated on January 4, 2011, *id*., he has provided no evidence that reasonably supports that belief. In fact, Plaintiff called in to Wal-Mart to report car trouble in May of 2011. Pl. Dep. 175:2–177:16 Therefore, in addition to failing to show he was a qualified individual with a disability, Plaintiff has failed to show that he was discharged, either actually or constructively. Therefore, the undersigned recommends Wal-Mart be granted summary judgment on Plaintiff's claim for wrongful termination.

### c. Hostile Work Environment Claim

Plaintiff also asserts a claim for hostile work environment in violation of the ADA. To establish a hostile work environment claim, Plaintiff must prove that:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors. Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). As noted above, the undersigned agrees with Defendant that Plaintiff has failed to show that he was a qualified individual with a disability, but proceeds through the remainder of the analysis in the event that the district judge disagrees.

13

Plaintiff alleges that he was harassed at Wal-Mart when Alexander and Lee "abruptly demanded" in the presence of customers and other associates that he not use a chair while on duty. [Entry #122-1 at 16]. Plaintiff argues he was further harassed when he, Alexander, and Lee discussed the matter with Shift Manager Hicks. *Id.* Plaintiff argues that he was subject to harassment again on January 4, 2011, when he was written up for insubordination and told that he should not come back until he could fulfill the essential functions of his job. *Id.*

Assuming without deciding that Plaintiff has shown he was subject to unwelcome harassment on the basis of his disability, Plaintiff has not shown that the alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment. To satisfy this element, Plaintiff must show that he not only subjectively believed his workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile. *Fox*, 247 F.3d at 178. To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 178. The conduct at issue must be far more severe than that of "a merely unpleasant working environment," *Hopkins v. Balt. Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.), *cert. denied,* 519 U.S. 818 (1996), and must be sufficiently pervasive so as to become diffuse throughout every part of the work environment in which plaintiff functioned. *Schweitzer-Reschke v. Avnet, Inc.,* 874 F. Supp. 1187, 1195 (D. Kan. 1995).

In the instant case, Plaintiff has not shown that Alexander and Lee's confronting him for sitting in the chair, the discussion with Hicks about the need for the chair, and his subsequent discipline for being insubordinate constitutes harassment that is so severe and pervasive that it alters a term, condition, or privilege of his employment. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim of hostile work environment under the ADA.

### 2. Plaintiff's Title VII Claim

#### a. Exhaustion

Although Plaintiff has brought a claim for race discrimination, it does not appear that he has exhausted his administrative remedies on that claim. Pl. Dep. at 102:12–23; Entry #116-3 at 2. Plaintiff did not check the "race" box and did not mention race in his description of the alleged discrimination on his SCHAC charge. [Entry #116-3 at 2–3].

A plaintiff's administrative claim "defines the scope of [his] subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "If a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent suit." *Id.* at 247–48. Fourth Circuit case law has generally precluded a subsequent claim in "formal litigation" where "the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Without exhausting administrative

remedies in a Title VII claim, this court is deprived of subject matter jurisdiction. *Id.* at 300–01.

In the instant case, Plaintiff listed only "retaliation" and "disability" as the basis of his charge filed with SCHAC. [Entry #116-3 at 2–3]. Thus, he has not administratively exhausted his claim based on race discrimination and this court lacks subject matter jurisdiction as to that claim.[2] *See Beane v. Agape Mgmt. Servs., Inc.*, No. 3:08-3445-CMC, 2009 WL 2476629, at *3 (D.S.C. Aug. 11, 2009) (granting motion to dismiss retaliation claim where plaintiff "checked the box for race discrimination in her charge and did not check the box for retaliation"). Therefore, the undersigned recommends Plaintiff's claim for race discrimination pursuant to Title VII be dismissed for failure to exhaust administrative remedies.

                b.       Merits of Plaintiff's Race Discrimination Claim

Even if Plaintiff had exhausted his administrative remedies, Plaintiff has not proven a prima facie case of race discrimination. To establish a prima facie case of racial discrimination under Title VII, a plaintiff must prove: (1) he is a member of a protected class; (2) he was performing satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for

---

[2] Although Wal-Mart did not argue that Plaintiff failed to exhaust his administrative remedies on his race discrimination claim, Plaintiff's failure to exhaust deprives this court of subject matter jurisdiction, and "it is always incumbent upon a federal court to evaluate its jurisdiction sua sponte, to ensure that it does not decide controversies beyond its authority." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988).

16

the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

Assuming without deciding that Plaintiff can prove the first three elements of his race discrimination claim, Plaintiff's claim still fails, because he has not shown that a similarly-situated employee received more favorable treatment. Plaintiff appears to claim that he is similarly-situated to a former white employee named Travis, whose last name is unknown. [Entry #122-1 at 8; Pl. Dep. 159:10–160:9; Hicks Dep. 8:20–9:11 (Hicks' deposition can be found at Entry #122-21)]. Travis was allowed to use a chair near the fitting room after he was injured on the job. *Id.*

When a plaintiff bases his discrimination claim on a similarly-situated comparator, it is the plaintiff's "task to demonstrate that the comparator is indeed similarly situated." *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). Plaintiffs are required to show that they are similar in all relevant respects to their comparators. *Haywood*, 387 Fed. Appx. at 359. "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* The task falls on Plaintiff to identify a suitable comparator, bearing in mind that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Bradley v. S.C. Dep't. of Corr.*, C/A No. 3:08–2510–JFA, 2010 WL

17

883729 (D.S.C. March 5, 2010) (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)).

Plaintiff has not shown that Travis is a similarly-situated employee who received more favorable treatment because: (1) Travis, unlike Plaintiff, was injured in an accident on the job, and Wal-Mart policy allows such employees light duty when needed [Entry #116-5 at 6]; (2) Plaintiff has no information set forth any evidence about Travis such as his title, to whom he reported, or what his job-responsibilities were, Pl. Dep. 159:10–160:9; and (3) Plaintiff was allowed to use a chair, although not the chair of his choice, through January 3, 2011, which is the last day his health care providers indicated he needed any restrictions. Therefore, because Plaintiff has not shown that a similar-situated employee outside of his protected class received more favorable treatment, he has failed to show a prima facie case of race discrimination.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #116] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 12, 2013                              Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

18

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).