IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Torrey Josey, | ) | C/A No. 0:11-2993-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Wal-Mart Stores East, L.P., | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, *pro-se* Plaintiff Torrey Josey ("Josey") seeks recovery from his former employer, Wal-Mart Stores East, L.P. ("Wal-Mart"), for alleged disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA") and alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] The matter is before the court on Wal-Mart's motion for summary judgment. Dkt. No. 116. For reasons set forth below, Wal-Mart's motion for summary judgment is granted.

## PROCEDURAL BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On September 12, 2013, the Magistrate Judge issued a Report recommending that Wal-Mart's motion for summary judgment be granted. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Josey filed a timely objection on September 30, 2013, objecting to the Report in its entirety. Dkt. No. 129. Josey filed an amended objection on October 7, 2013. Dkt. No. 130.

---

[1] The court previously dismissed Plaintiff's ADA retaliation claim, as well as his negligence claim. Dkt. No. 43.

**FACTUAL BACKGROUND**

Plaintiff was hired by Wal-Mart as an Inventory Associate in August 2010. On December 2, 2010, Plaintiff was injured in a non work-related moped accident during his lunch break. Plaintiff notified Wal-Mart that he would not return to work that day because of the accident. On December 3, 2010, Plaintiff returned to work, with a note from a chiropractor restricting Plaintiff to lifting no more than 5 pounds for one week through December 10, 2010. Based on that restriction, a manager directed Plaintiff to go to the fitting rooms "and see what [he] could do at that position." Dkt. No. 116-2 (Pl. Dep. 146:21-25).

During the month following his accident, Plaintiff provided two additional notes to Wal-Mart: a December 10, 2010 note, restricting Plaintiff to part-time work of five hours per day through December 17, 2010; and a December 15, 2010 note, restricting Plaintiff to "only half days with continued light duty" through January 3, 2011. Plaintiff continued to work at the fitting room and answered phone calls for approximately a month. At some point during that time, Plaintiff claims that other employees, at least one of whom he believed was a manager, informed him that a prior employee had used a chair by the fitting room. Plaintiff used a chair for some portion of his shifts in this position.

On January 1, 2011, two assistant managers observed Plaintiff sitting in a black leather office chair, which Plaintiff admits he removed from a display rack on the sales floor. One of the assistant managers rudely told him that he could not use a chair. Plaintiff loudly responded that the manager was discriminating against him because of his disability and that he was going to call his attorney. After the confrontation, the two assistant managers and Plaintiff immediately went to discuss the issue with Shift Manager Sherry Hicks ("Hicks"). After a discussion in which Plaintiff explained

his need for a chair, Hicks told Plaintiff he could not use the black leather office chair but allowed him to use a different chair or stool. Plaintiff returned to his work area, removed the black leather chair, and completed his shift with a red, plastic chair.

Plaintiff was not scheduled to work on January 2 and 3, 2011. On January 4, 2011, Plaintiff returned to work. Two different assistant managers approached Plaintiff and issued him a verbal warning for insubordination based on the January 1, 2011 confrontation, citing that Plaintiff became "loud" during that confrontation. One of the assistant managers then told Plaintiff to leave and not return to work until his restrictions were removed such that he could return to his position as Inventory Associate.

On May 11, 2011, Plaintiff was released to return to work without restriction. Wal-Mart placed him on the work schedule without requiring him to complete any paperwork for new hires. On the day Plaintiff was scheduled to return to work, Plaintiff called Wal-Mart and said that he was having car trouble and would not make it to work. Plaintiff never returned to work at Wal-Mart.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416

F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

Plaintiff alleges four claims: (1) failure to accommodate a disability in violation of the ADA; (2) wrongful termination in violation of the ADA; (3) hostile work environment in violation of the ADA; and (4) race discrimination in violation of Title VII. The Report finds that Plaintiff has not established a *prima facie* case for any of his claims and recommends granting Wal-Mart's motion for summary judgment. The court addresses Plaintiff's objections as they relate to each claim below.

### I. Americans with Disabilities Act ("ADA")

**(1) ADA Accommodation.** Plaintiff alleges Wal-Mart failed to provide a reasonable accommodation under the ADA. To establish a *prima facie* case for an ADA claim based on an employer's failure to accommodate an employee's disability, a plaintiff must show "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (alterations in original) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

As to the first element, Plaintiff argues that a trial is necessary to recieve medical testimony to determine whether Plaintiff had a disability under the ADA. The Report agrees with Plaintiff and finds that there is a genuine dispute of material fact as to whether Plaintiff had a disability under the ADA. The court, therefore, need not consider Plaintiff's objection as to this element.

As to the second element, the Report finds that Wal-Mart did not have notice of his disability. The Report finds that although Wal-Mart had notice of temporary restrictions from December 3, 2010 through January 3, 2011, Wal-Mart did not have notice of an ADA-qualifying disability. Plaintiff objects to this finding, appearing to argue that certain managers had notice of his disability because they saw him using a chair and because he specifically asked a manager on January 1, 2011 if he could continue using a chair because of his pain.[2] The court agrees with the Report's finding that Wal-Mart did not have notice that Plaintiff's temporary restrictions reflected a disability covered by the ADA, *i.e.*, an impairment that substantially limits a major life activity. However, even assuming Plaintiff was disabled and Wal-Mart had notice of Plaintiff's disability, Plaintiff's accommodation claim fails for the additional reasons below.

The Report finds that Plaintiff has not established the third element of an ADA accommodation claim – that he could perform his job with accommodation. The Report cites Plaintiff's admission that he would not be able to perform his job, Inventory Associate, with the

---

[2] It is unclear whether Plaintiff is also arguing that Wal-Mart regarded him as having a disability. As explained by the Fourth Circuit:

> An individual is regarded as being disabled if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities. 42 U.S.C.A. § 12102(2) (West 1995). One may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [one] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). "The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action" *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996).

*Haulbrook*, 252 F.3d at 703. Whether an employer regarded an employee as having a disability relates to whether an individual has a disability under the ADA, which is the first element of the *prima facie* case. As explained above, there is a genuine issue of material fact as to whether Plaintiff had a disability under the ADA during the relevant time period.

accommodation of a chair. Because Plaintiff has provided no proposed accommodation that would allow him to perform the functions of his position as Inventory Associate, the court agrees Plaintiff has failed to show that Wal-Mart refused to make a reasonable accommodation.

Plaintiff appears to argue that, after his accident, he was transferred or reassigned to a new position at the fitting room, which included answering the phones. He contends that he was able to perform the duties of this position with the accommodation of a chair, which he actually used while in this position. Plaintiff has cited no evidence, other than his impression, indicating he had been permanently reassigned. What the evidence suggests is that he was *temporarily* reassigned to this position for approximately a month, while he was recovering from his accident. Plaintiff appears to argue that the ADA requires that Wal-Mart allow him to remain in the temporary position indefinitely. As explained in the Report, Wal-Mart is under no legal obligation to accommodate an employee by "reallocat[ing] essential job functions or assign[ing] an employee 'permanent light duty'" or by "creat[ing] a new position as an accommodation." *See* Report at 11 (quoting *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011); *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002)).

The facts suggest that, after his accident, Wal-Mart attempted to accommodate Plaintiff by providing him a temporary assignment, and allowing him to use a chair. After the January 1, 2011 incident leading to a warning for insubordination, Wal-Mart provided him a leave of absence and held his job (Inventory Associate) open while he was recovering from the accident. There is no evidence that Plaintiff applied for a different position at Wal-Mart while his restrictions were in place or that Plaintiff requested an accommodation for his Inventory Associate position. The court agrees that Plaintiff has not shown that he could perform the essential functions of his position with reasonable accommodation.

**(2) Wrongful Termination.** Plaintiff alleges a claim for wrongful termination in violation of the ADA. To establish a *prima facie* case of wrongful termination under the ADA, Plaintiff must show that (1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004).

The Report finds that Plaintiff was not discharged on January 4, 2011. Although "Plaintiff alleges that he was discharged because Rowan allegedly told him not to return to his job until he was able to perform the essential functions of his job," he has provided "no evidence that this statement constituted a termination." Report at 12-13. Further, "when Plaintiff's health care providers indicated he was able to return to work without restriction in May 2011, Wal-Mart put him back on the schedule." *Id.* at 13. And, as explained in the Report, he was not required to complete any paperwork for new hires. *Id.*

Plaintiff objects to the finding that he was not discharged and cites to Hicks' inability to describe Plaintiff's employment status after Plaintiff was asked to leave and not return until his restrictions had been lifted. Dkt. No. 129 (citing deposition of Sherry Hicks; responding "I don't know" when asked "what was it called when Walmart told [Plaintiff] not to come back until he was fully recovered from the back injury?"). Mrs. Hicks' inability to define Plaintiff's employment status does not create a genuine dispute of material fact as to the issue of discharge. First, Mrs. Hicks was not the manager who asked Plaintiff to leave and not to return until the restrictions were lifted. Second, the record supports a finding that Plaintiff was not terminated, as he was indeed allowed to

return to work at Wal-Mart when his restrictions were lifted. Because Plaintiff has failed to show that he was discharged, Plaintiff cannot establish a *prima facie* case for wrongful termination.[3]

**(3) Hostile Work Environment.** Plaintiff also asserts a claim for hostile work environment in violation of the ADA. To establish a hostile work environment claim, Plaintiff must show, *inter alia*, that "the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment." *Fox v. Gen. Motors. Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). Plaintiff has failed to demonstrate the alleged hostile work environment was either severe or pervasive. In support of his hostile work environment claim, Plaintiff has cited to two incidents occurring on January 1, 2011 and January 4, 2011. Plaintiff alleges that, on January 1, 2011, two managers approached him and "abruptly demanded" that he not use the chair. Dkt. No. 1-1 at ¶7 ("Compl."). Plaintiff contends he explained why he needed the chair and the managers once again "abruptly demanded in the present [*sic*] of customers and associates that he couldn't have a chair while on duty." *Id.* Immediately following this confrontation, he and the two managers met with the shift manager to discuss the situation. Plaintiff completed the remainder of his shift and returned to Wal-Mart for his next shift on January 4, 2011. During that shift, Plaintiff was given a verbal warning by two different managers, and was asked to leave and not return until he was fully

---

[3] In analyzing Plaintiff's wrongful termination claim, the Report finds that Plaintiff was not disabled under the ADA, and references its earlier analysis. Report at 12 ("For the reasons set forth above, the undersigned agrees that Plaintiff has failed to show that he was a qualified individual with a disability."). However, in the earlier analysis considering Plaintiff's accommodation claim under the ADA, the Report finds that there is a genuine issue of material fact as to whether Plaintiff is disabled. *Id.* at 8. The Report repeats this inconsistency when analyzing Plaintiff's claim for hostile work environment under the ADA. *Id.* at 13 ("As noted above, the undersigned agrees with Defendant that Plaintiff has failed to show that he was a qualified individual with a disability . . . ."). The court, therefore, does not adopt the inconsistent findings on this issue, and adopts the initial finding that there is a genuine issue of material fact as to whether Plaintiff was disabled under the ADA.

recovered. Nothing in Plaintiff's allegations or in the record suggests either of these incidents, considered alone or collectively, was harassment that was so severe or pervasive as to alter a term, condition, or privilege of employment. The court, therefore, concludes that Plaintiff cannot establish a claim for hostile work environment.

### II. Title VII

**(1) Exhaustion.** The Report finds that Plaintiff has not exhausted his administrative remedies to proceed with a Title VII claim for race discrimination. The Report explained that "Plaintiff did not check the 'race' box and did not mention race in his description of the alleged discrimination on his SCHAC charge."[4] Report at 15. Plaintiff objects, arguing that he did not fail to "check the box" for race discrimination because he did not complete the form. Rather, he alleges a SCHAC staff member completed the form based on his report and that the staff member determined he was not making a charge of race discrimination.[5] He also argues that the particulars portion of the charge makes a comparison to a white employee. Dkt. No. 129 at 29.

---

[4] SCHAC is the South Carolina Human Affairs Commission.

[5] The Fourth Circuit recently explained how an EEOC charge of discrimination is typically completed:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.6. After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge. This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it. *See* U.S. Equal Employment Opportunity Comm'n, The Charge Handling Process, available at http:// www. eeoc. gov/employees/process. cfm (last visited Feb. 15, 2013).

*Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).

" In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge." *Balas*, 711 F.3d at 407. Although EEOC charges are to be "construed with utmost liberality," a court may not "read into administrative charges allegations they do not contain." *Id.* at 408. The charge itself states, "To my knowledge a white employee was provided an accommodation and was not harassed." Dkt. No. 116-3 at 2. The court finds that this sentence identifies a potential race discrimination claim by comparing the terms or conditions of his employment to that of a white employee. Liberally construed, the court finds that Plaintiff's charge of discrimination gave notice that he was making a claim for race discrimination. The court, therefore, declines to adopt this portion of the Report and finds that Plaintiff's Title VII claim for race discrimination was properly exhausted.

        **(2) Race Discrimination.** Turning to the merits of Plaintiff's race discrimination claim, Plaintiff must establish, *inter alia*, that similarly-situated employees received more favorable treatment.[6] *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff has identified an employee named "Travis" as a Caucasian employee who was allegedly allowed to use a chair at the fitting room after an accident. Plaintiff has not, however, identified any further details

---

[6] As explained by the Fourth Circuit:

> Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). However, in this case, the plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, and therefore the validity of their *prima facie* case depends upon whether that comparator is indeed similarly situated. *Burdine*, 450 U.S. at 258, 101 S.Ct. 1089 (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.").

*Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010).

about Travis, such as his position, his supervisors, or the nature of his injury.[7] It is Plaintiff's burden to show that he is similar in all relevant respects to his comparator. *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal quotations omitted). Further, as explained in the Report, "Plaintiff was allowed to use a chair, although not the chair of his choice, through January 3, 2011, which is the last day his health care providers indicated he needed any restrictions." Report at 18. Plaintiff, therefore, has failed to set forth a *prima facie* case of race discrimination.

## CONCLUSION

As indicated above, the court adopts the Report in part and declines to adopt the Report in part. For reasons stated above, the court grants Wal-Mart's motion for summary judgment in full.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 8, 2013

---

[7] As attachments to his objections, Plaintiff submitted identical affidavits from three individuals stating that "[t]here was an employee prior to Torrey Josey that use [*sic*] a chair for an injury." Dkt. No. 129-4. The affidavits do not explain whether these individuals are or were employees of Wal-Mart or otherwise explain how they have personal knowledge of the facts set forth in their affidavits. Further, the affidavits do not state the race of the employee who used a chair.